IN THE MATTER OF: D.D., D.T., T.T., D.T. & T.T., Minor Children.
No. COA09-60
Court of Appeals of North Carolina
Filed July 21, 2009
This case not for publication
Mecklenburg County Attorney's Office, by J. Edward Yeager, Jr., for petitioner-appellee.
Joyce L. Terres, for respondent-appellant mother. Betsy J. Wolfenden, for respondent-appellant father.
STEPHENS, Judge.
Respondent-mother and respondent-father (collectively "respondents") appeal the order terminating their parental rights to the minor children, D.D., D.T., T.T., D.T., and T.T. This Court entered an opinion on 16 June 2009 vacating the trial court's order in part and affirming in part. In light of the Supreme Court's opinion in In re K.J.L., ___ N.C. ___, ___ S.E.2d ___, 2009 WL 1689135 (2009), we allow Petitioner's motion to withdraw our 16 June 2009 opinion, and vacate our judgment of that date. The opinion of this Court follows.

I. Procedural History and Factual Background
On 27 August 2004, the Rowan County Department of Social Services ("DSS") filed a juvenile petition alleging that D.D., D.T., T.T., and D.T. ("the older children") were neglected and dependent juveniles. No summons was issued to respondents. On 11 October 2004, respondents moved to a new residence, and a trial placement of the children with the respondents was authorized on 18 October 2004. A hearing was held on 18 October 2004 at which respondents appeared and consented to an adjudication of neglect. On 13 January 2005, the court filed an order returning these children to respondents' custody.
On 5 May 2005, DSS filed a second juvenile petition alleging that the older children were neglected and dependent juveniles. Again, no summons was issued to respondents. On 27 June 2005, the court adjudicated the children dependent pursuant to a consent order. As a result, the children were placed with a maternal aunt. Respondents appeared in court for this adjudication. Because respondents were moving to Mecklenburg County, the trial court transferred the case to Mecklenburg County.
In January 2006, respondents secured a two-bedroom home in Charlotte on their own. The older children were transitioned home in a trial home placement at the end of the school year in June 2006. The children and respondents were to meet with an in-home therapist, but the therapy was cancelled when respondents and the children missed too many sessions. The family's water service was disconnected for four days because the bill was not paid on time. The four older children were transferred back into custody with their aunt on 14 September 2006.
On 8 September 2006,[1] T.T. was born to respondents. Mecklenburg Youth and Family Services ("petitioner") filed a juvenile petition on 25 September 2006 alleging that T.T. was neglected and dependent, having tested positive for methadone at birth. Summons was issued to and served upon each respondent. T.T. was adjudicated as neglected and dependent following hearings on 25 January 2007 and 21 March 2007. T.T. was placed in the custody of the children's aunt at birth.
On 10 January 2008, petitioner filed petitions to terminate the parental rights of respondents to all five children. To establish its custody of the four oldest children, petitioner attached to the petitions the August 2004 Rowan County nonsecure custody order. Summonses were issued to respondents for each of the five children. On 9 October 2008, the trial court filed an order terminating the parental rights of respondents on the grounds that respondents (1) neglected the children, and (2) left the children in out-of-home placement for more than twelve months without making reasonable progress in correcting the conditions that led to the removal of the children from the home. As an additional ground for terminating the parental rights of respondent-mother, the trial court concluded she failed to pay a reasonable portion of the cost of care of the children. The trial court's order referenced only the Rowan County nonsecure custody order to establish its jurisdiction in the cases of the older children. Respondent-mother filed notice of appeal on 27 October 2008. Respondent-father, the father of the four youngest children,[2] filed notice of appeal on 7 November 2008.

II. Subject Matter Jurisdiction
On appeal, respondents argue that the trial court lacked subject matter jurisdiction to terminate their parental rights with respect to the older children because no summons was issued to either party in the original juvenile petitions filed in Rowan County District Court. In light of the Supreme Court's recent opinion, K.J.L., Respondents' argument is without merit.
In K.J.L., a summons was issued in the neglect and dependency proceedings, but the summons was deficient in that it was not dated and signed in compliance with N.C. Gen. Stat. § 7B-406(a) (2007). K.J.L., at *1. "The summons was thus not `issued' as that term is used in Rule 4(a), and consequently the issuance requirement of N.C.G.S. § 7B-406(a) was not satisfied." Id. at *2. The juvenile's parents were served with the deficient summons and both parents were present in open court when the matter was called for hearing. Id. at *1. "Without raising any objection to the court's jurisdiction, both parents knowingly stipulated that K.J.L. was a neglected juvenile." Id.
The K.J.L. Court held that summons-related deficiencies "`implicate personal jurisdiction and thus can be waived by the parties.'" Id., at *3 (quoting In re J.T. (I), 363 N.C. 1, 4, 672 S.E.2d 17, 19 (2009)). "[T]he summons is not the vehicle by which a court obtains subject matter jurisdiction over a case, and failure to follow the preferred procedures with respect to the summons does not deprive the court of subject matter jurisdiction." Id. "Because the summons affects jurisdiction over the person rather than the subject matter, this Court has held that a general appearance by a civil defendant `waive[s] any defect in or nonexistence of a summons.'" Id. (quoting Dellinger v. Bollinger, 242 N.C. 696, 698, 89 S.E.2d 592, 593 (1955) (emphasis added) (citations omitted)). Thus, in K.J.L., the Court held that "the failure to issue a summons in the neglect and dependency action did not affect the trial court's subject matter jurisdiction, and the parents' appearance at the neglect and dependency hearing without objection to jurisdiction waived any defenses implicating personal jurisdiction." Id. Accordingly, in the present case, the failure to issue a summons to either parent in the neglect and dependency proceedings in Rowan County did not affect the subject matter jurisdiction of the trial court. This argument is overruled.

III. Termination of Parental Rights
Having concluded that the trial court had subject matter jurisdiction over the older children, we address respondents' arguments as to the trial court's termination order as it applies to all five children.
"Termination of parental rights is a two-stage proceeding." In re Brim, 139 N.C. App. 733, 741, 535 S.E.2d 367, 371 (2000). At the adjudicatory stage, the trial court must determine that at least one ground for termination exists pursuant to N.C. Gen. Stat. § 7B-1111. In re Blackburn, 142 N.C. App. 607, 610, 543 S.E.2d 906, 908 (2001). In this stage, the burden of proof is on the petitioner, and the court's decision must be supported by clear, cogent, and convincing evidence. Id. A trial court's determination that at least one ground for termination exists will be overturned only upon a showing by the respondent that there is a lack of clear, cogent, and convincing competent evidence to support the findings. In re Allen, 58 N.C. App. 322, 325, 293 S.E.2d 607, 609 (1982). The trial court's "findings of fact are conclusive on appeal if they are supported by `ample, competent evidence,' even if there is evidence to the contrary." In re J.M.W., 179 N.C. App. 788, 792, 635 S.E.2d 916, 919 (2006) (quoting In re Williamson, 91 N.C. App. 668, 674, 373 S.E.2d 317, 320 (1988)).
Once one or more of the grounds for termination are established, the trial court must proceed to the dispositional stage where the best interests of the child are considered. There, the court shall issue an order terminating the parental rights unless it further determines that the best interests of the child require otherwise.
Blackburn, 142 N.C. App. at 610, 543 S.E.2d at 908. "Once [the petitioner] has met its burden of proof in showing the existence of one of the grounds for termination, . . . the decision of whether to terminate parental rights is within the trial court's discretion." In re Allred, 122 N.C. App. 561, 569, 471 S.E.2d 84, 88 (1996) (citation omitted). "The decision to terminate parental rights is vested within the sound discretion of the trial judge and will not be overturned on appeal absent a showing that the [trial court's] actions were manifestly unsupported by reason." In re J.A.A., 175 N.C. App. 66, 75, 623 S.E.2d 45, 51 (2005) (citation omitted).

A. Termination of Respondent-Father's Parental Rights
Respondent-father argues the trial court's termination order was entered in error because the findings were not supported by clear, cogent, and convincing evidence, and the findings were insufficient to support the conclusion that respondent-father is likely to neglect the children in the future. We disagree.
A neglected juvenile is defined by N.C. Gen. Stat. § 7B-101(15) as one
who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law. In determining whether a juvenile is a neglected juvenile, it is relevant whether that juvenile lives in a home . . . where another juvenile has been subjected to abuse or neglect by an adult who regularly lives in the home.
N.C. Gen. Stat. § 7B-101(15) (2007). In determining whether to terminate parental rights on the ground that the parent has neglected a child, the trial court may consider evidence of neglect prior to removal of a child from custody, and "must also consider any evidence of changed conditions in light of the evidence of prior neglect and the probability of a repetition of neglect." In re Ballard, 311 N.C. 708, 715, 319 S.E.2d 227, 232 (1984) (citation omitted). When a child has been absent from the parent's home for a period of time preceding the termination hearing, "the decision of the trial court must of necessity be predictive in nature, as the trial court must assess whether there is a substantial risk of future abuse or neglect of a child based on the historical facts of the case." In re McLean, 135 N.C. App. 387, 396, 521 S.E.2d 121, 127 (1999).
The trial court's findings of fact show that in May 2005, respondents and the children were living at a homeless shelter but were on the verge of eviction from the shelter because the children were not being properly supervised. On at least three occasions, neither parent was present when D.D. got off the school bus, and on at least one occasion, the children were reported to be roaming the streets. T.T. was born addicted to methadone on 8 September 2006. Respondent-father had a prescription for methadone, but respondent-mother did not. At the time of the filing of the juvenile petition for T.T., a social worker went to the home for the purpose of picking up the children's clothes and possessions. The social worker found the home "in shambles." She found dirty clothes piled everywhere, dirty dishes stacked up in the kitchen, and food and food wrappers dispersed all over the home. The social worker also observed that during visits, respondent-father had trouble controlling the children, who were disrespectful to him. Respondent-father sometimes appeared drowsy during visits.
Although respondent-mother had admitted to him that she had abused methadone for years and that she stole respondent-father's methadone, respondent-father testified at the termination hearing that he did not think respondent-mother had a problem with substance abuse. Furthermore, respondent-mother had attended inpatient treatment programs for drug addiction, and she had lost her license as a registered nurse due to problems with substance abuse.
The trial court made the following findings of fact with respect to respondent-father:
38. The father is limited in the care he can provide the children. His pain medication makes him drowsy and slow. Most of the specific examples of inappropriate supervision, poor choices in care, . . ., and the messy homes, happened when the father was in charge because the mother was in the hospital or away for other reasons. . . .
39. The father is in denial about the nature and extent of [respondent-mother's] addiction. He claims not to have noticed she had been stealing his methadone for years. He cannot be counted on to care for the children if the mother is incapacitated due to substance abuse, health problems, or [if] she finds work.
. . . .
51. Due to the father's inability to identify or acknowledge the mother's substance abuse problems and symptoms and the family's chronic issues with budgeting and multiple collapses into homelessness, the likelihood for the repetition of the neglect of these children is high.
The record contains ample competent evidence to support the trial court's factual findings, and the findings of fact support the trial court's conclusion of law that the children are neglected and that it is probable the neglect will be repeated. Accordingly, respondent-father's argument is overruled.
Having concluded that the trial court properly found the existence of this ground for terminating respondent-father's parental rights, we need not address respondent-father's argument that the trial court erred in terminating his parental rights under N.C.G.S. § 7B-1111(a)(2) (where parent has willfully left the juvenile in foster care outside the home for 12 months without showing reasonable progress has been made to improve the conditions that led to the juvenile's removal). "[W]here we determine the trial court properly concluded that one ground exists to support the termination of parental rights, we need not address the remaining grounds." In re Clark, 159 N.C. App. 75, 84, 582 S.E.2d 657, 663 (2003).

B. Termination of Respondent-Mother's Parental Rights
Respondent-mother argues the trial court erred in failing to make sufficient findings of fact to support its conclusion of law that it is in the best interests of the children to terminate respondent-mother's parental rights. Specifically, respondent-mother contends the trial court failed to make adequate findings of fact to reflect that it considered the factors listed in N.C. Gen. Stat. § 7B-1110(a) in making its best interests determination.
Once the court determines the existence of a ground to terminate parental rights, it must then determine whether the best interests of the child require termination of parental rights. N.C. Gen. Stat. § 7B-1110(a) (2007). In determining whether termination of parental rights is in the best interests of the child, the court considers:
(1) The age of the juvenile.
(2) The likelihood of adoption of the juvenile.
(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
(4) The bond between the juvenile and the parent.
(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
(6) Any relevant consideration.
N.C. Gen. Stat. § 7B-1110(a).
In the present case, the trial court's order contains findings of fact as to the children's ages, how long the children have been in foster care, and the likelihood of the children being adopted by the current relative placement. The findings reflect that the children have been out of their parents' care for most of the time since 2004; that the children have been placed with a maternal aunt and are doing well with that placement; that the children's needs are being met; and that the aunt is interested in adopting the children. Accordingly, we hold that the trial court's findings of fact are sufficient to support its conclusions of law and determination that it is in the children's best interests to terminate respondent-mother's parental rights. Respondent-mother's argument is overruled.
AFFIRMED.
Judges JACKSON and STROUD concur.
Report per Rule 30(e).
NOTES
[1] The record on appeal contains conflicting evidence as to whether T.T. was born on 7 September 2006 or 8 September 2006. Because the trial court's termination order provides that T.T. was born on 8 September 2006, we use this date throughout our opinion.
[2] Paternity of the oldest child, D.D., has never been established.