IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-102

Filed 3 December 2024

Henderson County, No. 22CVD276

JONATHON LEDFORD and KAYLA LEDFORD, Intervenor Plaintiffs,

v.

MARY LEDFORD, Plaintiff,

v.

JAMES BURRELL and VIRGINIA BURRELL, Defendants.

Appeal by defendant Virginia Burrell from order entered 18 September 2023 by Judge Kimberly Gasperson-Justice in Henderson County District Court. Heard in the Court of Appeals 27 August 2024.

> *BA FOLK, PLLC, by J. Denton Adams, for defendant-appellant Virginia Burrell.*
>
> *Sheffron, Lee & Associates, by Tamara M. Lee, for intervenor-plaintiffs-appellees. No intervenor-plaintiff-appellee brief.*
>
> *Ms. Mary Ledford, pro se, no plaintiff-appellee brief.*
>
> *Mr. James Burrell, pro se, no defendant brief.*

GORE, Judge.

Defendant Virginia Burrell ("defendant") appeals the permanent order granting intervenor-plaintiffs sole care, custody, and control of the minor child, L.M. Defendant James Burrell ("James") has not made an appearance nor sought appeal of the permanent order. Defendant argues the trial court lacked personal jurisdiction

of her to enter the permanent order, and argues intervenor-plaintiffs lacked standing to seek custody of L.M. Upon review of the record and the sole brief submitted by defendant, we affirm the trial court's order.

**I.**

Defendant is the daughter of plaintiff Mary Ledford. Defendant and James Burrell had a daughter, L.M., in 2019. Defendant, James, and L.M. lived with plaintiff Ledford from the time of L.M.'s birth. Plaintiff Ledford was the primary caregiver and financial provider for the child since birth. Defendant has a severe drug addiction. She left the home and child in December 2021. Plaintiff Ledford claims James is mentally handicapped, has a bipolar disorder, cannot read, write, or count money, and he lacks the ability to make critical decisions. In February 2022, James gave L.M. into the care and custody of L.M.'s maternal cousins, intervenor-plaintiffs, who reside in South Carolina. Intervenor-plaintiffs claimed James "abdicated" his parental duties to them; they also claimed James was not fit nor a proper person to care for L.M.

Plaintiff Ledford filed an emergency custody complaint in the District Court, Henderson County for the child and was granted an Ex Parte Emergency Custody Order for sole custody of L.M. The Ex Parte Order also denied James and defendant access to L.M. while the order was in effect. Soon after, intervenor-plaintiffs filed a motion to intervene, for child custody, to petition for emergency custody, and to establish jurisdiction. The trial court entered a temporary custody order consented

to by James, plaintiff-Ledford, and intervenor-plaintiffs: (1) that allowed intervenor-plaintiffs to intervene, (2) that gave custody of L.M. to intervenor-plaintiffs, (3) that provided supervised visitation and telephone contact for plaintiff Ledford with L.M., and (4) that disallowed any unsupervised contact between L.M. and her parents, defendant and James.

There are no summons or alias and pluries summons in the record that demonstrates defendant was served with the emergency complaint and additional pleadings filed. Yet, on 18 November 2022, a temporary non-prejudicial judgment/order was signed by all parties, including defendant. The temporary order acknowledged intervenor-plaintiffs had primary custody of L.M. and plaintiff Ledford had secondary custody. The temporary order required mediation among the parties and set the case for a hearing for permanent custody.

Defendant included a narrative in the record due to the trial court failing to record the permanent custody hearings that occurred 27 March 2023, 18 April 2023, 21 July 2023, and 18 September 2023. Within the narrative, it plainly states defendant appeared and was represented by attorney Elisa Jarrin on the first day of the hearing for permanent custody. The narrative also references attorney Jarrin examining one of the intervenor-plaintiffs during the hearing. On the final hearing date, 18 September 2023, the narrative states that defendant did not appear, and that her attorney had withdrawn by this time. The trial court determined plaintiff Ledford's house was not safe for L.M. because of certain individuals with violent

criminal records related to drugs and domestic violence that plaintiff had previously allowed into her home while L.M. was present. On 18 September 2023, the trial court entered a permanent order granting intervenor-plaintiffs sole legal care, custody, and control of L.M., and granting plaintiff Ledford grandparent visitation rights. The trial court granted defendant and James supervised visitation rights "at the discretion of the intervenor-plaintiffs." On 13 October 2023, defendant filed a timely notice of appeal to specifically appeal the permanent order.

## II.

Defendant appeals of right pursuant to N.C.G.S. § 7A-27(b)(2). Defendant argues the trial court's permanent child custody order is void for lack of personal jurisdiction. Specifically, she argues the alias and pluries summons was never properly effectuated upon her. Defendant also argues the trial court erred in entering the permanent custody order because intervenor-plaintiffs lacked standing to seek custody of the child. We disagree.

We review questions regarding matters of law de novo. *Slattery v. Appy City, LLC*, 385 N.C. 726, 729 (2024). As our Supreme Court recently stated, "[W]hen a court lacks subject matter jurisdiction, its actions are void, and objections thereto cannot be waived. When the court lacks personal jurisdiction, however, its actions are merely voidable. The defendant must therefore attack the action's validity at the first available opportunity; otherwise, the objection is waived." *Id.* at 735. Our

Supreme Court also previously discussed the effect of deficiencies in summons and service of process:

> [A] court's jurisdiction over a person is generally achieved through the issuance and service of a summons. Deficiencies regarding the manner in which a court obtains jurisdiction over a party, including those relating to a summons, are waivable and must be raised in a timely manner. . . . Even without a summons, a court may properly obtain personal jurisdiction over a party who consents or makes a general appearance, for example, by . . . appearing at a hearing without objecting to personal jurisdiction.
> . . .
>
> Because the summons affects jurisdiction over the person rather than the subject matter, this Court has held that a general appearance by a civil defendant waive[s] any defect in or nonexistence of a summons.

*In re K.J.L.*, 363 N.C. 343, 346–47 (2009) (internal quotation marks and citations omitted).

In the present case, defendant argues she was never served with the summons and complaint. Defendant admits in her brief, and there is evidence in the record, that she signed a consent order for temporary custody with intervenor-plaintiffs on 18 November 2022. Additionally, there is evidence in the record that she made an appearance for at least one of the permanent custody hearings and was represented by counsel at one of the hearings. Her attorney had an opportunity to question at least one of the witnesses during the hearing in which they appeared. At a later hearing, defendant did not appear, and the record indicates her attorney had withdrawn from representing her. This evidence demonstrates defendant submitted herself to the jurisdiction of the court, and there is no indication she challenged

personal jurisdiction during these court appearances. Accordingly, defendant waived any challenge to personal jurisdiction. Therefore, the trial court's permanent child custody order is valid.

Next, defendant argues intervenor-plaintiffs lacked standing to seek custody of L.M. The question of standing in a child custody matter is controlled by N.C.G.S. § 50-13.1(a). Section 50-13.1(a) states, "Any parent, relative, or other person . . . claiming the right to custody of a minor child may institute an action or proceeding for the custody of such child . . . ." When the party seeking custody is not the parent of the child, they must demonstrate "a relationship in the nature of a parent and child relationship, even in the absence of a biological relationship, . . . to support a finding of standing." *Chávez v. Wadlington*, 261 N.C. App. 541, 545 (2018), *aff'd*, 373 N.C. 1 (2019) (citation omitted). When the non-parent is seeking custody against the biological parent, the non-parent "must also allege some act inconsistent with the parent's constitutionally protected status." *Id.* at 546. There must be a showing that the parents are "unfit, have neglected the welfare of the child, or have acted in a manner inconsistent with the paramount status provided by the Constitution" to maintain standing in the action. *Id.*

In the present case, intervenor-plaintiffs are cousins of L.M. who took L.M. into their home and began caring for all her needs starting in February 2022. Intervenor-plaintiffs alleged when they intervened in this cause of action, brought by plaintiff Mary Ledford, that they had a parent-child relationship because they "have cared for,

nurtured, and provided for the minor child as a parent would provide for a child." Intervenor-plaintiffs also alleged: (1) defendant and James[1] acted "inconsistent with their constitutionally protected status as natural parents," (2) that defendant previously placed L.M. "at risk of substantial harm through her continued and repeated drug abuse," (3) that she is still "using and abusing illicit substances," and (4) that defendant placed L.M. "at a risk of substantial harm as a result of her inability to provide a safe and suitable environment." Further, the trial court concluded that defendant "acted inconsistent with [her] constitutionally protected rights" after finding that defendant had used illicit substances and had used these substances while L.M. was in her care.

Defendant concedes that she has a history with illicit substances and "often wander[s] the streets of Asheville." There are also references in the record to defendant's substance abuse and the instability of her living situation. Accordingly, despite defendant's challenge, the record indicates that intervenor-plaintiffs have standing to seek and gain custody of L.M. Intervenor-plaintiffs properly alleged and testified to their relationship with L.M. and acknowledged acts that were inconsistent with defendant's and James's "constitutionally protected status." *Chávez*, 261 N.C.

---

[1] Defendant argues that James had the mental capacity of a seven- or eight-year-old and could not make decisions for L.M. Although this is not properly before us, we note that the record demonstrates at least one attorney challenged his mental capacity during trial. The trial court took time to question and examine the mental capacity of James. According to the record, James stated he understood the "nature of the proceedings" during his questioning by the trial court.

App. at 546. Therefore, the trial court did not err in determining intervenor-plaintiffs had standing.

Having considered defendant's challenges to personal jurisdiction and standing, we affirm the trial court's permanent order for custody of L.M.


AFFIRMED.

Judges ZACHARY and MURPHY concur.